Richard M. Garbarini (RG 5496)
GARBARINI FITZGERALD P.C.
250 Park Ave, 7th Floor
New York, New York 10177
Phone: (212) 300-5358
Fax: (888) 265-7054

*Attorney for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

SIMON J. BURCHETT PHOTOGRAPHY, INC.,

        Plaintiff,

    v.

MSL LLC, NABTESCO MOTION CONTROL,
INC., CORROSSION USA, MAHANAIM
SHIPPING LINE LLC, MADAGASCAR
FOUNDATION, RED SQUARE CORP., MICHAEL
KWADRAT, NOMAD BRANDS INC., CML
EXPORTS AND MOVING CO., DENA CO., LTD.
and TITAN INDUSTRIES, INC.,

        Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Case No.: 23-cv-905

**ECF CASE**

**COMPLAINT AND JURY
DEMAND FOR DAMAGES FOR
COPYRIGHT INFRINGEMENT**

    Plaintiff SIMON J. BURCHETT PHOTOGRAPHY, INC., by and through the

undersigned counsel, brings this Complaint and Jury Demand against defendants MSL, LLC,

NABTESCO MOTION CONTROL, INC., CORROSSION USA, MAHANAIM SHIPPING

LINE LLC, MADAGASCAR FOUNDATION, RED SQUARE CORP., MICHAEL

KWADRAT, NOMAD BRANDS INC., CML EXPORTS AND MOVING CO., DENA CO.,

LTD. and TITAN INDUSTRIES, INC., for damages based on copyright infringement pursuant to

the Copyright Act and Copyright Revisions Act, 17 U.S.C. §§ 101, et seq. ("the Copyright Act"

or "Act") and  violations of the Digital Millennium Copyright Act, 17 U.S.C. §§ 1201-05 (the

"DMCA").  Plaintiff alleges below, upon personal knowledge as to itself, and upon information

and belief as to other matters so indicated.

1

**INTRODUCTION**

1.      Plaintiff is the sole owner and creator of two iconic images of the maiden voyage of the containership the Estelle Maersk (the "Copyrighted Images").

2.      Plaintiff's Copyrighted Images were sent, by request, to A.P. Moller Maersk for review.

3.      A.P. Moller Maersk elected not to license the images, but, without license or authority, distributed and made available the Copyrighted Images to defendants.

4.      Each of the defendants unlicensed reproduction, distribution, and publicly display the Copyrighted Images, without license or authority, originated with the unlicensed Maersk posting.

5.      None of the defendants sought a license from Maersk (even though Maersk could not grant a license) or plaintiff.

6.      Each of the named defendants continued to publicly display the Copyrighted Images despite demands to cease-and-desist.

7.      Each of the defendants infringed plaintiff's rights pursuant to Section 106 of the Copyright Act.

**JURISDICTION AND VENUE**

8.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 (federal question jurisdiction) and 1338(a) (jurisdiction over copyright actions).

**SPECIFIC JURISDICTION**

9.      Plaintiff is the sole owner of all rights and title to the original copyrighted images titled "_L4A0298" and "_L4A059" of the containership the Estelle Maersk - U.S. Copyright Registration No. VAu 1-254-330 (the "Copyrighted Images")

10.     Defendants are incorporated and reside out of state.

11.    Defendants, without license or authority, reproduced the Copyrighted Images and publicly displayed them as part of defendants' website and/or in defendants' advertisements.

12.    These are torts committed outside the state.

13.    Defendants were put on notice multiple times that their conduct infringed plaintiff's rights.

14.    Each of the defendants elected to ignore each notice, and continued to infringe.

15.    Defendants' widescale distribution of the Copyrighted Images has substantially damaged the Copyrighted Images, and plaintiff's ability to license the Copyrighted Images.

16.    Defendants' false designation of the origin of the Copyrighted Images, even after notice, has damaged plaintiff's ability to license the Copyrighted Images.

17.    Plaintiff was specifically injured by defendants' infringing conduct in New York State.

18.    Defendants were put on notice multiple times that his infringing activity was having consequences in this state.

19.    Defendants elected to continue to infringe, knowing its actions would have consequences in this state.

20.    Substantially all of defendants' revenue is generated from interstate and international commerce.

21.    The entirety of the Copyrighted Images were used by defendants to promote defendants' services and overall institutions.

22.    Jurisdiction is conferred to this Court over defendants pursuant to CPLR §§ 301 and 302(a)(3)(ii).

**VENUE**

23.    At bar, a substantial part of the events or omissions giving rise to the claim

occurred in this Judicial District.  Venue is proper pursuant to 28 U.S.C. § 1391(b)(1)-(3).

**DUE PROCESS**

24.    There are no due process concerns in light of the fact that defendants committed

intentional torts knowing their acts would have consequences in this Judicial District.

**PARTIES**

25.    Plaintiff SIMON J. BURCHETT PHOTOGRAPHY, INC. is a New York

corporation with a headquarters located in Manhattan, New York.

26.    Upon information and belief, defendant MADAGASCAR FOUNDATION is a

corporation organized under the laws of Delaware with a headquarters located at 3922 Carolina

Drive, Lake Worth, FL 33461.  Defendant may be served through its registered agent: Inc. Plan

(USA), 3500 S. Dupont Highway, Suite 20C, Dover, DE 19901.

27.    Upon information and belief, defendant CORROSSION USA ("CORROSSION")

is a corporation organized under the laws of Delaware with a headquarters located at 323 Meota

Street, Park Forest, Illinois 60466.

28.    Upon information and belief, defendant TITAN INDUSTRIES, INC. d/b/a

TITAN COVEYORS ("TITAN") is a corporation organized under the laws of Wisconsin with a

headquarters located at 735 Industrial Loop Road, New London, WI 54961-2600.

29.    Upon information and belief, defendant NABTESCO MOTION CONTROL, INC.

("NABTESCO") is a corporation organized under the laws of Michigan with a headquarters

located at 23976 Freeway Park Drive, Farmington Hills, MI 48335.

30.    Upon information and belief, defendant MAHANAIM SHIPPING LINE LLC

("MAHANAIM") is a limited liability company with a headquarters located at 310 Emmett St.,

Newark, NJ 07114.

31.     Upon information and belief, defendant MSL LLC ("MSL") is a limited liability company with a headquarters located at 375 Hudson Street, New York, NY 10014.

32.     Upon information and belief, defendant CML EXPORTS AND MOVING CO. ("CML") is a corporation with a headquarters located at 375 Hudson Street, New York, NY 10014.

33.     Upon information and belief, defendant DENA CO., LTD. ("DENA") is a foreign corporation with a headquarters located at Shibuya Scramble Square, 2-24-12 Shibuya, Shibuya-ku, Tokyo 150-6140.

34.     Upon information and belief, defendant TITAN INDUSTRIES, INC. d/b/a TITAN CONVEYORS ("TITAN") is a corporation with a headquarters located at 735 Industrial Loop Rd, New London, WI 54961.

35.     Upon information and belief, defendants RED SQUARE CORP. ("RED SQUARE") is a corporation organized under the laws of Pennsylvania with a headquarters located at 1722 Murray Ave, Pittsburgh, PA 15217.

36.     Upon information and belief, defendants NOMAD BRANDS INC. ("NOMAD") is a corporation organized under the laws of Pennsylvania with a headquarters located at 2031 Murray Ave Pittsburgh PA 15217.

37.     Upon information and belief, defendants MICHAEL KWADRAT ("KWADRAT") is an individual residing at 1028 S Braddock Ave, Pittsburgh, PA 15218.

FACTS

38.     Plaintiff is the sole owner, by assignment, of the below copyrighted image of the containership Estelle Maersk titled "_L4A0298" - U.S. Copyright Registrations No. VA 2-019-

846 (the "298 Image"). See **Exhibit 1**.



39.     Plaintiff is the sole owner of all rights and title to an original copyrighted image

titled "_L4A0259" of the containership the Estelle Maersk - U.S. Copyright Registration No. VA

2-019-846 (the "259 Image"). See **Exhibit 1**.



40.     Together the 298 Image and the 259 Image are referred to collectively as the

Copyrighted Images.

41.     Plaintiff is owned solely by Simon Burchett, a world-renowned photographer who

has been honored with many awards and accolades.

42.     Mr. Burchett is accredited as a master photographer by the Master Photographers'

Association (the "MPA") in England.  To become accredited, a photographer must: (i) have

professional liability insurance, (ii) show a substantial history of professional work, (iii) provide

a detailed client list, (iv) produce a curriculum vitea, and (iv) pass an interview.

43.     In July 2019, the 298 Image at issue here was submitted by Mr. Burchett to the

Master Photographers' Competition.  The Master Photographers' Competition is a national

competition conducted by the MPA and is open to all professional photographers. There were over 1,000 images submitted to the July 2019 Master Photographers' Competition.

44.    Plaintiff's 298 Image won the very prestigious Gold Medal at the July 2019 MPA competition. Previously, Mr. Burchett won a Silver Medal at the Master Photographers' Association competition in 2018 for the 259 Image.

## A.P. MOLLER MAERSK

45.    Plaintiff's Copyrighted Images were sent, by request, to A.P. Moller Maersk for review.

46.    A.P. Moller Maersk elected not to license the images, but, without license or authority, distributed and made available the Copyrighted Images to defendants.

47.    Each of the defendants reproduced, distributed, and publicly displayed the Copyrighted Images without license or authority.

48.    Each of the named defendants continued to publicly display the Copyrighted Images despite demands to cease-and-desist.

49.    Each of the defendants infringed plaintiff's rights pursuant to Section 106 of the Copyright Act.

## DEFENDANT MADAGASCAR FOUNDATION'S INFRINGEMENT

50.    Defendant MADAGASCAR obtained both Copyrighted Images from Maersk.

51.    Defendant MADAGASCAR, without license or authority, reproduced, and publicly displayed the Copyrighted Images on its website.

52.    The Copyrighted Images on defendant's website still bear the watermark for "Maerskline.com".

53.    The 298 Image appears on defendant MADAGASCAR's website located at <www.madagascar-foundation.org/solidarity/>. See below.



54.     The 259 Image appears on defendant MADAGASCAR's website located at <www.madagascar-foundation.org/solidarity/>. See below.



55.     The Google Image reverse image search did not become a viable search tool until 2018.

56.     From June 2018 to present, plaintiff conducted monthly searches on Google Images for its Copyrighted Images.

57.     Defendant MADAGASCAR's infringement did not appear in any of the monthly searches until March 2022.

58.     On March 19, 2022, a cease-and-desist was served on defendant

8

MADAGASCAR. See **Exhibit 2**.

59.    Defendant MADAGASCAR elected to ignore the March 19, 2022 cease-and-desist, and continued to infringe.

60.    On September 3, 2022, a draft complaint was sent to defendant MADAGASCAR, and a further demand was made to cease-and-desist. See **Exhibit 3**.

61.    Again, defendant MADAGASCAR elected to ignore the cease-and-desist, and continued to infringe.

62.    As of the date of this Complaint, the Copyrighted Images are still active and available to the public on defendant MADAGASCAR's website.

63.    At no time did the defendant MADAGASCAR have the right to use the Copyrighted Images in any manner.

64.    As the above screenshot demonstrates, the infringing use of the Copyrighted Images by defendant MADAGASCAR served no function but aesthetics.

65.    Defendant MADAGASCAR placed so much value on the Copyrighted Images that it elected to make it the face of defendant MADAGASCAR to the public.

66.    As of the date of this Complaint, the Copyrighted Images are still active on defendant MADAGASCAR's website.

67.    Defendant MADAGASCAR has infringed plaintiff's right to copy, distribute, and publicly display the Copyrighted Image pursuant to 17 U.S.C. § 106. Plaintiff is entitled to its actual damages, as well as defendant's profit in excess of plaintiff's actual damages.

68.    Defendant MADAGASCAR's blatant failure to license the Copyrighted Images prior to its purely commercial use, and its continued infringing conduct after multiple notices, entitles plaintiff to an election of two enhanced statutory damage awards pursuant to 17 U.S.C. § 504(c)(2).

## DEFENDANT MADAGASCAR'S DMCA VIOLATIONS

69.     Plaintiff permanently embeds copyright management information ("CMI") in the metadata of every image it owns prior to distribution.  Plaintiff embedded CMI in the Copyrighted Images here which included, the name of plaintiff as the copyright owner, plaintiff's website URL, the name of plaintiff's owner as photographer, the title of the image, and the date and time the data was registered.

70.     Defendant MADGASCAR falsely claimed the Copyrighted Images were owned by Maersk.

71.     Defendant MADGASCAR refused to correct the CMI despite multiple notices.

72.     Defendant MADGASCAR did the forgoing with the intent to conceal the infringement.

73.     Defendant MADGASCAR committed numerous violations of 17 U.S.C. §§ 1201-02 – the Digital Millennium Copyright Act ("DMCA").  Defendant MADGASCAR's: (i) removal of the embedded CMI, (ii) failure to properly attribute the Copyrighted Image, and (iii) failure to properly attribute the Copyrighted Image after each notice, are separate violations of Section 1202 of the DMCA.

74.     Plaintiff disabled the right-click copy function on each of its images prior to distribution.

75.     Defendant MADGASCAR removed the technical measure plaintiff incorporated to protect the Copyrighted Images, and distributed the unlicensed Copyrighted Images with the right-click copy function enabled.  This means any viewer can copy the Copyrighted Images by simply clicking a mouse.  This is a violation of section 1201 of the DMCA.

76.     Plaintiff is entitled to up to $25,000 for each violation of the DMCA pursuant to Section 1203 of the DMCA, plus its reasonable attorneys' fees, and costs for this action.

## TITAN CONEYOR'S INFRINGEMENT

77.    Without a license or authority, defendant TITAN reproduced the 298 Image, and then distributed and publicly displayed the 298 Image its website found at <https://www.titanconveyors.com/conveyor-news/id/26>. See below.



78.    As the above screenshot demonstrates, the infringing use of the 298 Image by defendant TITAN served no function but aesthetics.

79.    Defendant TITAN was served with a demand to cease-and-desist.

80.     At no time did defendant TITAN have the right to use the 298 Image in any manner.

81.    Defendant TITAN placed so much value on the 298 Image that it elected to make it the face of defendant TITAN to the public.

82.    Defendant TITAN has infringed plaintiff's right to copy, distribute, and publicly display the 298 Image pursuant to 17 U.S.C. § 106.  Plaintiff is entitled to its actual damages, as well as defendant's profit in excess of plaintiff's actual damages.

83.    Defendant TITAN did not seek a license for the 298 Image, and there are no facts that support a reasonable belief by defendant TITAN that it had the right to use the 298 Image.

84.    Defendant TITAN's infringing conduct was intentional, and plaintiff, at its election, is entitled to an enhanced statutory damage awards pursuant to 17 U.S.C. § 504(c)(2).

85.    Defendant TITAN removed the CMI from the 298 Image.

86.    Defendant TITAN did the forgoing with the intent to conceal the infringement.

87.    Plaintiff disabled the right-click copy function on each of its images prior to distribution.

88.    Defendant TITAN removed the technical measure plaintiff incorporated to protect the 298 Images, and distributed the unlicensed 298 Image with the right-click copy function enabled.  This means any viewer can copy the 298 Image by simply clicking a mouse.  This is a violation of section 1201 of the DMCA.

89.    Plaintiff is entitled to up to $25,000 for each violation of the DMCA pursuant to Section 1203 of the DMCA, plus its reasonable attorneys' fees, and costs for this action.

## DEFENDANTS RED SQUARE'S, KWADRAT'S, AND NOMAD'S INFRINGEMENT

90.    At all times material hereto, defendant KWADRAT participated in, assisted in, supervised, guided and totally controlled defendants RED SQUARE and NOMAD in their decision making, financing and other affairs.  Defendants RED SQUARE and NOMAD are the "alter egos" of KWADRAT and are dominated, controlled and supervised by KWADRAT to such a degree that they have no independent ability to function.

91.    KWADRAT is the sole owner of both corporate defendants, and function as interchangeable names for defendant KWADRAT to use to conduct the questionable import of goods from the Russian Federation for sale in the United States.

92.    Defendants are a unified enterprise that share physical location, ownership, management, and policy.

93.    Collectively, defendants KWADRAT, RED SQUARE, and NOMAD are referred to as the "KWADRAT Defendants".

94.    The KWADRAT Defendants claims on their website that they are an "International distributor of roofing, siding, and structural materials".

95.    Substantially the entire home page of the KWADRAT defendants' website located at <www.redsquatreco.com> is an unlicensed reproduction of the 298 Image. See below.



96.    The KWADRAT defendants placed so much value on the 298 Image that they elected to make it the face of the KWADRAT defendants to the public.

97.    At no time did the KWADRAT defendants have the right to use the 298 Image in any manner.

98.    Defendants infringed plaintiff's exclusive rights to the 298 Image pursuant to 17 U.S.C. § 106.

99.    On November 12, 2020, immediately after discovering the KWADRAT defendants' infringing use of the 298 Image, plaintiff, through counsel, served a cease-and-desist notice on defendants. See **Exhibit 4**.

100.   The KWADRAT defendants ignored the notice and continued to infringe.

101.   On February 24, 2022, a draft of the withing Complaint was served on the KWADRAT Defendants, and the KWADRAT Defendants were instructed that all it had to do to avoid a filing at this time, was contact the plaintiff. See **Exhibit 5**.

102.   The KWADRAT Defendants refused to cease-and-desist and refused to contact plaintiff's counsel to discuss a possible resolution.

103.   For over two years after the KWADRAT Defendants were first put on notice, the 298 Image was still the entire home-page of the KWADRAT Defendants' website.

104.   The KWADRAT Defendants copied, edited, distributed, and publicly displayed

plaintiff's 298 Image with no license or authority.

105.    The KWADRAT Defendants' acts of infringement were done for purely commercial reasons.

106.    The KWADRAT Defendants' blatant failure to license the 298 Image prior to its purely commercial use, and after notice, entitles plaintiff to enhanced damages pursuant to 17 U.S.C. § 504(c)(2).

107.    The KWADRAT Defendants have infringed plaintiff's right to copy, distribute, and publicly display the 298 Image pursuant to 17 U.S.C. § 106.  Plaintiff is entitled to its actual damages, as well as defendants' profit in excess of plaintiff's actual damages.

108.    Plaintiff may also elect one enhanced statutory damage award of up to $150,000, but not less than $30,000, plus its attorneys' fees and costs incurred in this matter.

109.    The KWADRAT Defendants scrubbed and removed the CMI embedded by plaintiff in the 298 Image's metadata.

110.    The KWADRAT Defendants did the forgoing with the intent to conceal the infringement.

111.    The KWADRAT Defendants have committed numerous violations of 17 U.S.C. §§ 1201-02 of the DMCA.

112.    The KWADRAT Defendants': (i) removal of the embedded CMI, (ii) failure to properly attribute the 298 Image, and (iii) failure to properly attribute the 298 Image after each notice, are separate violations of Section 1202 of the DMCA.

113.    Plaintiff disabled the right-click copy function on each of its images prior to distribution.

114.    The KWADRAT Defendants removed the technical measure plaintiff incorporated to protect the 298 Image, and distributed the unlicensed 298 Image with the right-

14

click copy function enabled. This means any viewer can copy the 298 Image by simply clicking a mouse. This is a violation of section 1201 of the DMCA.

115.    Plaintiff is entitled to up to $25,000 for each violation of the DMCA pursuant to Section 1203 of the DMCA, plus its reasonable attorneys' fees, and costs for this action.

## DEFENDANT NABTESCO'S INFRINGEMENT

116.    Upon information and belief, defendant NABTESCO, without license or authority, reproduced the 298 Image directly or indirectly from the Maersk posting.

117.    At no time did defendant NABTESCO seek to obtain a license for the 298 Image, and there are no facts that support a reasonable belief that defendant NABTESCO had the right to reproduce, creative a derivative work, distribute, or publicly display the 298 Image.

118.    Defendant NABTESCO, without license or authority, reproduced, distributed, publicly displayed, and created a derivative work of the 298 Image.

119.    The unauthorized derivative of the 298 Image is located on defendant NABTESCO's website at <https://nabtesco>.  See below.



120.    As the above screenshot of defendant NABTESCO's homepage demonstrates, the unlicensed derivative of the 298 Image was substantially defendant NABTESCO's entire homepage.

121.    Defendant NABTESO is a United States based entity, its website located at <www.nabtescomotioncontrol.com/> links to, and is part of, the <www.nabtesco.de> website.

122.    Defendant NABTESCO placed so much value on the 298 Image that it elected to make it the face of defendant NABTESCO to the public.

123.    At no time did the defendant NABTESCO have the right to use the 298 Image in any manner.

124.    Defendant NABTESCO infringed plaintiff's exclusive rights to the 298 Image pursuant to 17 U.S.C. § 106.

125.    On October 30, 2022, immediately after discovering defendant NABTESCO's infringing use of the 298 Image, plaintiff, through counsel, served a cease-and-desist notice on defendant NABTESCO. See **Exhibit 6**.

126.    Defendant NABTESCO ignored the notice and continued to infringe.

127.    On November 14, 2022, a final cease-and-desist was served on defendant NABTESCO. See **Exhibit 7**.

128.    Defendant NABTESCO refused to cease-and-desist and refused to contact plaintiff's counsel to discuss a possible resolution.

129.    Defendant NABTESCO copied, edited, distributed, and publicly displayed plaintiff's 298 Image with no license or authority.

130.    Defendant NABTESCO's acts of infringement were done for purely commercial reasons.

131.    Defendant NABTESCO has infringed plaintiff's right to copy, distribute, and publicly display the 298 Image pursuant to 17 U.S.C. § 106.  Plaintiff is entitled to its actual damages, as well as defendant NABTESCO's profit in excess of plaintiff's actual damages.

132.    Defendant NABTESCO's blatant failure to license the 298 Image prior to its purely commercial use, and its continued use after notice, entitles plaintiff to the election of an enhanced statutory damage award pursuant to 17 U.S.C. § 504(c)(2).

133.    Defendant NABTESCO scrubbed and removed the CMI embedded by plaintiff in the 298 Image's metadata.

134. Defendant NABTESCO did the forgoing with the intent to conceal the infringement.

135. Defendant NABTESCO has committed numerous violations of 17 U.S.C. §§ 1201-02 of the DMCA.

136. Defendant NABTESCO's: (i) removal of the embedded CMI, (ii) failure to properly attribute the 298 Image, and (iii) failure to properly attribute the 298 Image after each notice, are separate violations of Section 1202 of the DMCA.

137. Plaintiff disabled the right-click copy function on each of its images prior to distribution.

138. Defendant NABTESCO removed the technical measure plaintiff incorporated to protect the 298 Image, and distributed the unlicensed 298 Image with the right-click copy function enabled. This means any viewer can copy the 298 Image by simply clicking a mouse; this is a violation of section 1201 of the DMCA.

139. Plaintiff is entitled to up to $25,000 for each violation of the DMCA pursuant to Section 1203 of the DMCA, plus its reasonable attorneys' fees, and costs for this action.

**DEFENDANT MSL'S INFRINGEMENT**

140. Defendant MSL, without license or authority, obtained a reproduction of the 298 Image from Maersk, or on Maersk's behalf.

141. At no time did defendant MSL seek to obtain a license for the 298 Image, and there are no facts that support a reasonable belief that defendant MSL had the right to reproduce, creative a derivative work, distribute, or publicly display the 298 Image.

142. MSL, without license or authority, reproduced, distributed, publicly displayed, and created a derivative work of the 298 Image.

143. Defendant MSL incorporated the unlicensed 298 Image in its marketing materials,

and distributed the subject marketing materials to numerous third-parties.

144.    One of the third-parties defendant MSL distributed and publicly displayed the unauthorized derivative work was on the website DesignRush located at <www.designrush.com/agency/profile/msl-south africa>. (See below.)



145.    As the above screenshot of defendant MSL's marketing materials demonstrates, the unlicensed derivative of the 298 Image was nearly half of defendant MSL's marketing materials.

146.    Defendant MSL placed so much value on the 298 Image that it elected to make it the face of defendant MSL to the public.

147.    At no time did the defendant MSL have the right to use the 298 Image in any manner.

148.    Defendant MSL infringed plaintiff's exclusive rights to the 298 Image pursuant to 17 U.S.C. § 106.

149.    On October 30, 2022, immediately after discovering defendant MSL's infringing use of the 298 Image, plaintiff, through counsel, served a cease-and-desist notice on defendant MSL. See **Exhibit 8**.

150.    Defendant MSL ignored the notice and continued to infringe.

151.    Defendant MSL copied, edited, distributed, and publicly displayed plaintiff's 298 Image with no license or authority.

152.    Defendant MSL's acts of infringement were done for purely commercial reasons.

153.    Defendant MSL has infringed plaintiff's right to copy, distribute, and publicly display the 298 Image pursuant to 17 U.S.C. § 106.  Plaintiff is entitled to its actual damages, as well as defendant MSL's profit in excess of plaintiff's actual damages.

154.    Defendant MSL's blatant failure to license the 298 Image prior to its purely commercial use, and its continued use after notice, entitles plaintiff to the election of an enhanced statutory damage award pursuant to 17 U.S.C. § 504(c)(2).

155.    Defendant MSL scrubbed and removed the CMI embedded by plaintiff in the 298 Image's metadata.

156.    Defendant MSL distributed the unlicensed 298 Image with no CMI.  In fact, defendant MSL's "Public Relations Materials" identifies Maersk as the owner of the 298 Image.

157.    Defendant MSL did the forgoing with the intent to conceal the infringement.

158.    Defendant MSL has committed numerous violations of 17 U.S.C. §§ 1201-02 of the DMCA.

159.    Defendant MSL's: (i) removal of the embedded CMI, (ii) failure to properly attribute the 298 Image, and (iii) failure to properly attribute the 298 Image after notice, are separate violations of Section 1202 of the DMCA.

160.    Plaintiff disabled the right-click copy function on each of its images prior to distribution.

161.    Defendant MSL removed the technical measure plaintiff incorporated to protect the 298 Image, and distributed the unlicensed 298 Image with the right-click copy function enabled. This means any viewer can copy the 298 Image by simply clicking a mouse; this is a violation of section 1201 of the DMCA.

162.    Plaintiff is entitled to up to $25,000 for each violation of the DMCA pursuant to

Section 1203 of the DMCA, plus its reasonable attorneys' fees, and costs for this action.

## DEFENDANT MAHANAIM'S INFRINGEMENT

163.    Upon information and belief, defendant MAHANAIM, without license or authority, reproduced the 298 Image directly or indirectly from the Maersk posting.

164.    At no time did defendant MAHANAIM seek to obtain a license for the 298 Image, and there are no facts that support a reasonable belief that defendant MAHANAIM had the right to reproduce, creative a derivative work, distribute, or publicly display the 298 Image.

165.    Defendant MAHANAIM, without license or authority, reproduced, distributed, publicly displayed, and created a derivative work of the 298 Image.

166.    Defendant MANAHAIM created an advertisement with the unlicensed derivative of the 298 Image, and uploaded that advertisement to its Facebook page located at <www.facebook.com/MahanaimShipping/> and <www.facebook.com/MahanaimShipping/photos/565160018623446>.  See below.




167.    As the above screenshots demonstrate, defendant MANAHAIM reversed the 298 Image and removed the name from the side, among many other edits to the 298 Image by defendant MANAHAIM.

168.    At no time did defendant MANAHAIM have the right to use the 298 Image in any manner.

20

169.    Defendant MANAHAIM infringed plaintiff's exclusive rights to the 298 Image pursuant to 17 U.S.C. § 106.

170.    On August 27, 2022, immediately after discovering defendant MANAHAIM's infringing use of the 298 Image, plaintiff, through counsel, served a cease-and-desist notice on defendant MANAHAIM. See **Exhibit 9**.

171.    Defendant MANAHAIM ignored the notice and continued to infringe.

172.    Several additions attempts were made to defendant MANAHAIM demanding they cease-and-desist from any further use of the 298 Image.

173.    Defendant MANAHAIM ignored every contact.

174.    As of the date of this Complaint, the unlicensed derivate of the 298 Image is still active and available to the public on defendant MANAHAIM's Facebook page.

175.    Defendant MANAHAIM copied, edited, distributed, and publicly displayed plaintiff's 298 Image with no license or authority.

176.    Defendant MANAHAIM's acts of infringement were done for purely commercial reasons.

177.    Defendant MANAHAIM's blatant failure to license the 298 Image prior to its purely commercial use, and its continued use after notice, entitles plaintiff to the election of an enhanced statutory damage award pursuant to 17 U.S.C. § 504(c)(2).

178.    Defendant MANAHAIM scrubbed and removed the CMI embedded by plaintiff in the 298 Image's metadata.

179.    Defendant MANAHAIM did the forgoing with the intent to conceal the infringement.

180.    Defendant MANAHAIM has committed numerous violations of 17 U.S.C. §§ 1201-02 of the DMCA.

181.    Defendant MANAHAIM's: (i) removal of the embedded CMI, (ii) failure to properly attribute the 298 Image, and (iii) failure to properly attribute the 298 Image after each notice, are separate violations of Section 1202 of the DMCA.

182.    Plaintiff always disables the right-click copy function on each of its images prior to distribution.

183.    Defendant MANAHAIM removed the technical measure plaintiff incorporated to protect the 298 Image, and distributed the unlicensed 298 Image with the right-click copy function enabled. This means any viewer can copy the 298 Image by simply clicking a mouse; this is a violation of section 1201 of the DMCA.

184.    Plaintiff is entitled to up to $25,000 for each violation of the DMCA pursuant to Section 1203 of the DMCA, plus its reasonable attorneys' fees, and costs for this action.

## DEFENDANT CORROSION'S INFRINGEMENT

185.    Upon information and belief, defendant CORROSION, without license or authority, reproduced the 298 Image directly or indirectly from the unlicensed Maersk posting.

186.    At no time did defendant CORROSION seek to obtain a license for the 298 Image, and there are no facts that support a reasonable belief that defendant CORROSION had the right to reproduce, creative a derivative work, distribute, or publicly display the 298 Image.

187.    Defendant CORROSION, without license or authority, reproduced, distributed, publicly displayed, and created a derivative work of the 298 Image.

188.    Defendant CORROSION created an advertisement with the unlicensed derivative of the 298 Image, and uploaded that advertisement to its Facebook page.  See below.



189.    At no time did defendant CORROSION have the right to use the 298 Image in any manner.

190.    Defendant CORROSION infringed plaintiff's exclusive rights to the 298 Image pursuant to 17 U.S.C. § 106.

191.    On September 3, 2022, immediately after discovering defendant CORROSION's infringing use of the 298 Image, plaintiff, through counsel, served a cease-and-desist notice on defendant CORROSION. See **Exhibit 10**.

192.    Defendant CORROSION ignored the cease-and-desist and continued to infringe.

193.    On January 6, 2022, a second cease-and-desist notice was served on defendant CORROSION. See **Exhibit 11**.

194.    Defendant CORROSION ignored the cease-and-desist and continued to infringe.

195.    Defendant CORROSION copied, edited, distributed, and publicly displayed plaintiff's 298 Image with no license or authority.

196.    Defendant CORROSION's acts of infringement were done for purely commercial reasons.

197.    Defendant CORROSION's blatant failure to license the 298 Image prior to its purely commercial use, and its continued use after notice, entitles plaintiff to the election of an enhanced statutory damage award pursuant to 17 U.S.C. § 504(c)(2).

198.    Defendant CORROSION scrubbed and removed the CMI embedded by plaintiff in the 298 Image's metadata.

199.    Defendant CORROSION did the forgoing with the intent to conceal the infringement.

200.    Defendant CORROSION has committed numerous violations of 17 U.S.C. §§ 1201-02 of the DMCA.

201.    Defendant CORROSION's: (i) removal of the embedded CMI, (ii) failure to properly attribute the 298 Image, and (iii) failure to properly attribute the 298 Image after each notice, are separate violations of Section 1202 of the DMCA.

202.    Plaintiff always disables the right-click copy function on each of its images prior to distribution.

203.    Defendant CORROSION removed the technical measure plaintiff incorporated to protect the 298 Image, and distributed the unlicensed 298 Image with the right-click copy function enabled. This means any viewer can copy the 298 Image by simply clicking a mouse; this is a violation of section 1201 of the DMCA.

204.    Plaintiff is entitled to up to $25,000 for each violation of the DMCA pursuant to Section 1203 of the DMCA, plus its reasonable attorneys' fees, and costs for this action.

### DEFENDANT CML'S INFRINGEMENT

205.    Upon information and belief, defendant CML, without license or authority, reproduced the 298 Image directly or indirectly from the unlicensed Maersk posting.

206.    At no time did defendant CML seek to obtain a license for the 298 Image, and there are no facts that support a reasonable belief that defendant CML had the right to reproduce, creative a derivative work, distribute, or publicly display the 298 Image.

207.    Defendant CML, without license or authority, reproduced, distributed, publicly displayed, and created a derivative work of the 298 Image.

208.    Defendant CML created a banner advertisement for its website with the unlicensed derivative of the 298 Image.  See below.



209.    At no time did defendant CML have the right to use the 298 Image in any manner.

210.    Defendant CML infringed plaintiff's exclusive rights to the 298 Image pursuant to 17 U.S.C. § 106.

211.    On November 8, 2022, immediately after discovering defendant CML's infringing use of the 298 Image, plaintiff, through counsel, served a cease-and-desist notice on defendant CML. See **Exhibit 12**.

212.    Defendant CML ignored the cease-and-desist and continued to infringe.

213.    On January 31, 2023, a second cease-and-desist notice was served on defendant CML. See **Exhibit 13**.

214.    Defendant CML ignored the second cease-and-desist.

215.    Defendant CML copied, edited, distributed, and publicly displayed plaintiff's 298 Image with no license or authority.

216.    Defendant CML's acts of infringement were done for purely commercial reasons.

217.    Defendant CML's blatant failure to license the 298 Image prior to its purely commercial use, and its continued use after notice, entitles plaintiff to the election of an enhanced statutory damage award pursuant to 17 U.S.C. § 504(c)(2).

218.    Defendant CML scrubbed and removed the CMI embedded by plaintiff in the 298 Image's metadata.

219.    Defendant CML did the forgoing with the intent to conceal the infringement.

220.    Defendant CML has committed numerous violations of 17 U.S.C. §§ 1201-02 of the DMCA.

221.    Defendant CML's: (i) removal of the embedded CMI, (ii) failure to properly attribute the 298 Image, and (iii) failure to properly attribute the 298 Image after each notice, are separate violations of Section 1202 of the DMCA.

222.    Defendant CML removed the technical measure plaintiff incorporated to protect

the 298 Image, and distributed the unlicensed 298 Image with the right-click copy function enabled. This means any viewer can copy the 298 Image by simply clicking a mouse; this is a violation of section 1201 of the DMCA.

223.    Plaintiff is entitled to up to $25,000 for each violation of the DMCA pursuant to Section 1203 of the DMCA, plus its reasonable attorneys' fees, and costs for this action.

<strong>DEFENDANT DENA's INFRINGEMENT</strong>

224.    Upon information and belief, defendant DENA, without license or authority, reproduced the 298 Image directly or indirectly from the unlicensed Maersk posting.

225.    At no time did defendant DENA seek to obtain a license for the 298 Image, and there are no facts that support a reasonable belief that defendant DENA had the right to reproduce, creative a derivative work, distribute, or publicly display the 298 Image.

226.    Defendant DENA, without license or authority, reproduced, distributed, publicly displayed, and created a derivative work of the 298 Image.

227.    Defendant DENA created a slideshow for its products with the unlicensed derivative of the 298 Image.  See below.



228.    Peroli, Inc. (now DENA) employee Yu Yamanaka created the infringing advertising slideshow which was presented to clients, potential clients, and the general public. Mr. Yamanaka, without license or authority, reproduced, distributed, and publicly displayed, the 298 Image as part of the advertisement.

229.    Defendant DENA uploaded the infringing advertisement slideshow to the website
<www.slides> located at <https://slides.com/urelx/docker-about-host-networking#/20/>.

230.    Defendant then directed potential and current customers to the Slides website.

231.    At no time did defendant DENA have the right to use the 298 Image in any
manner.

232.    Defendant DENA infringed plaintiff's exclusive rights to the 298 Image pursuant
to 17 U.S.C. § 106.

233.    On October 30, 2022, immediately after discovering defendant DENA's
infringing use of the 298 Image, plaintiff, through counsel, served a cease-and-desist notice on
defendant DENA. See **Exhibit 14**.

234.    Defendant DENA ignored the cease-and-desist and continued to infringe.

235.    Defendant DENA copied, edited, distributed, and publicly displayed plaintiff's
298 Image with no license or authority.

236.    Defendant DENA's acts of infringement were done for purely commercial
reasons.

237.    Defendant DENA's blatant failure to license the 298 Image prior to its purely
commercial use, and its continued use after notice, entitles plaintiff to the election of an
enhanced statutory damage award pursuant to 17 U.S.C. § 504(c)(2).

238.    Defendant DENA scrubbed and removed the CMI embedded by plaintiff in the
298 Image's metadata.

239.    Defendant DENA did the forgoing with the intent to conceal the infringement.

240.    Defendant DENA has committed numerous violations of 17 U.S.C. §§ 1201-02 of
the DMCA.

241.    Defendant DENA's: (i) removal of the embedded CMI, (ii) failure to properly attribute the 298 Image, and (iii) failure to properly attribute the 298 Image after each notice, are separate violations of Section 1202 of the DMCA.

242.    Defendant DENA removed the technical measure plaintiff incorporated to protect the 298 Image, and distributed the unlicensed 298 Image with the right-click copy function enabled. This means any viewer can copy the 298 Image by simply clicking a mouse; this is a violation of section 1201 of the DMCA.

243.    Plaintiff is entitled to up to $25,000 for each violation of the DMCA pursuant to Section 1203 of the DMCA, plus its reasonable attorneys' fees, and costs for this action.

## COPYRIGHT INFRINGEMENT DAMAGE CALCULATION

### Actual Damage Calculation

244.    Plaintiff is entitled to its standard licensing fee for the Copyrighted Image of $5,000 per year (Internet only) for the three years prior to this Complaint.

245.    Plaintiff's actual damages also include defendants' direct, and indirect, profit from its exploitation of the Copyrighted Images, in excess of plaintiff's actual damages, plus the reasonable attorneys' fees and costs incurred in this matter.

### Statutory Damage Calculation

246.    In the event plaintiff elects enhanced statutory damage award(s), an award at the higher part of the range is demanded by the facts and circumstances in this matter.

247.    Each of the defendants' state-of-mind was higher than willful, it was brazen.

248.    Each of the defendants knew, at all times, what the extent of the rights, prohibitions, and requirements when using third-party content.

249.    Each of the defendants' rigid application of the same rights, prohibitions, and requirements to its own content demonstrates each of the defendants' state-of-mind.

250.    Each of the defendants' refused to cease and desist after notice(s), which demonstrates defendants' intent to infringe.

251.    The fact that there is a complete absence of any good faith belief that each of the defendants had the right to copy, distribute, and publicly display the Copyrighted Images, further supports a finding of intent to infringe.

252.    The Copyrighted Images have an average license rate of $5,000 per year, Internet only.  For the three years prior to this Complaint, plaintiff incurred $15,000 in lost license fees.

253.    Plaintiff's lost license fees of $15,000 should be multiplied by three ($45,000) prior to inclusion in the statutory award.

254.    An additional amount, subject to proof, should be included as a deterrent effect necessary to discourage defendants from engaging in the acts described herein in the future. The relevant acts to consider are, among others: (i) defendants clandestinely copied plaintiff's Copyrighted Images knowing there was no license, (ii) defendants attempted to hide their exploitation of the Copyrighted Images by scrubbing the metadata and failing to attribute, and (iii) when defendants' acts of intentional infringement were finally discovered after significant due diligence, defendants refused to comply, or even respond to the notices.

255.    Also applicable to the statutory award calculation is the fact that defendants have refused to respond to plaintiff's counsel's attempts to communicate.  In each communication to defendants, counsel expressly stated that the defendants merely had to email or call plaintiff's counsel to avoid the filing of the within action.

256.    Defendants clearly had no desire to cooperate in any manner with plaintiff's requests to participate in a resolution.  This demonstrates defendants' attitude and willingness to participate in the litigation process.

## FIRST CLAIM FOR RELIEF
## COPYRIGHT INFRINGEMENT

257.    Plaintiff incorporates the allegations contained in the preceding paragraphs as if set forth here at length here.

258.    It cannot be disputed that the plaintiff has a valid, registered copyrights, and owns all rights to the Copyrighted Images.

259.    Defendants without license or authority from plaintiff, reproduced, created a derivative work, publicly displayed, and/or distributed plaintiff's Copyrighted Images.

260.    Defendants did so solely for the purpose of commercial gain.

261.    Defendants refused to cease and desist after demand from plaintiff's counsel.

262.    Should plaintiff elect an award of statutory damages, only an award at the top of the statutory scale will serve as a deterrent to defendants.

263.    At all times relevant to this Complaint, defendants' use of the Copyrighted Images was not for criticism, comment, news reporting, teaching, scholarship, or research.

264.    At all times relevant to this Amended Complaint, defendants' use was not transformative.

265.    Defendants elected to reproduce, distribute, and/or publicly display plaintiff's Copyrighted Image, using the entirety of the image, without a license.

266.    As a direct and proximate result of defendants' infringement of plaintiff's exclusive rights to the Copyrighted Images as set forth in Section 106 of the Act, plaintiff has incurred damages, and requests an award of plaintiff's actual damages, and defendants' profits in excess of plaintiff's actual damages, plus the reasonable attorneys' fees and costs incurred in this action.  Plaintiff may also elect to recover one statutory damage award.  Defendants' acts of infringement were intentional or with reckless disregard to plaintiff's rights, and plaintiff is entitled to enhanced damages of up to $150,000 pursuant to 17 U.S.C. § 504(c)(2).

## SECOND CLAIM FOR RELIEF VIOLATION OF
## DMCA OF 1998, AS AMENDED
## 17 U.S.C. §§ 1201-05

267.    Plaintiff incorporates the allegations contained in the preceding paragraphs as if set forth at length here.

268.    Plaintiff always distributes its copyrighted images, including the Copyrighted Images here, with embedded CMI which includes the title of the image, name of the author and copyright owner.

269.    Defendants removed plaintiff's CMI, and copied, publicly displayed, and/or distributed the Copyrighted Image without the CMI.

270.    After removal of plaintiff's CMI, certain defendants included false CMI claiming defendants were the owner and author of the copyright to the Copyrighted Images.

271.    Defendants also circumvented a technological measure necessary to control access to Copyrighted Images; namely, defendants enabled the right-click copy function after plaintiff disabled it.

272.    Defendants violated Sections 1201-02 of the DMCA.

273.    Defendants did the forgoing with the intent to conceal the infringement.

274.    Plaintiff seeks award of statutory damages for each violation of Sections 1201-02 of the DMCA in the sum of $25,000, plus reasonable attorneys' fees and costs incurred in this action.

### PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for judgment against defendants, and awarding plaintiff as follows:

1.    restitution of defendants' unlawful proceeds in excess of plaintiff's compensatory damages;
2.    compensatory damages in an amount to be ascertained at trial;
3.    a statutory damage award, including all penalties authorized by the

Copyright Act (17 U.S.C. §§ 504(c)(1), 504(c)(2));

4.    an award of up to $25,000 in statutory damages for each violation by defendants of the DMCA, 17 U.S.C. §§ 1201-02;

5.    the reasonable attorneys' fees and costs incurred by plaintiff in this action (17 U.S.C. § 505);

6.    pre- and post-judgment interest to the extent allowable; and,

7.    such other and further relief that the Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury of all issues so triable.

Dated: February 2, 2023                    **GARBARINI FITZGERALD P.C.**
New York, New York

By: _Richard M. Garbarini_

Richard M. Garbarini (RG 5496)

32